**In re Richard FRIEDBERG, Debtor.**

**Alec H. CHAPLIN, as Agent for The Chaplin Group, Plaintiff,**

**v.**

**The HARBISON GROUP, a South Carolina General Partnership and Richard H. Friedberg and Roger N. Greene, as General Partners, Defendants.**

**Bankruptcy No. 87-B-10819(CB).
Adv. No. Pro. No. 87-6030A.**

United States District Court,
S.D. New York.

May 10, 1988.

**4**

Lori M. Lapin, Dewey, Ballantine, Bushy, Palmer & Wood, New York City, for plaintiff.

Mitchell H. Perkiel, Levin & Weintraub & Crames, New York City, for defendant–debtor.

## OPINION

GRIESA, District Judge.

Richard H. Friedberg is currently the debtor and the debtor in possession in a Chapter 11 proceeding pending in the United States Bankruptcy Court for the Southern District of New York. In addition to other holdings, Friedberg has a 70% interest in a South Carolina general partnership, The Harbison Group. The remaining 30% interest in Harbison is held by Roger N. Greene. Harbison is not currently a debtor in any bankruptcy court.

The matter before this court arises on a motion by Alec H. Chaplin, as agent for The Chaplin Group. Chaplin and The Chaplin Group will hereafter be referred to collectively as "Chaplin". The motion is made pursuant to 28 U.S.C. § 157(d), and seeks withdrawal from the bankruptcy court of an adversary proceeding brought by Chaplin against Harbison, Friedberg and Greene.

The motion is denied.

## FACTS

On April 17, 1987 Chaplin entered into an agreement to purchase from Harbison certain property in South Carolina for $15 million. Chaplin gave Harbison $300,000 as an earnest money deposit. Under the contract of sale, the closing was scheduled to occur on July 7, 1987.

On May 1, 1987 an involuntary petition seeking relief under Chapter 7 of the Bankruptcy Code was filed against Friedberg by Chemical Bank, Union Trust Company and Gotham Bank of New York. This petition was filed in the bankruptcy court for the Southern District of New York. On May 26, Friedberg responded to this petition by voluntarily filing a Chapter 11 petition for reorganization.

In a letter dated June 9, 1987 Chaplin sent Harbison a letter relating to the purchase of the South Carolina property. The letter stated:

> In order to complete the Chaplin Group's preparation for the closing, our bankruptcy counsel and title insurance company say that we need the following:
>
> \*   \*   \*   \*   \*   \*
>
> (4) the application by which this sale has been presented to the Bankruptcy Court for its approval;
> (5) a copy of the proposed Order to be presented to the Bankruptcy Judge approving the sale; ...

Bankruptcy Judge Cornelius Blackshear signed an order on July 1, 1987 which authorized Friedberg to cause Harbison to sell the South Carolina property to Chaplin in accordance with the April 17, 1987 agreement.

The bankruptcy court order notwithstanding, on July 6 Chaplin sent a letter to Harbison stating that Chaplin would not go forward with the closing. The basis for this action was a claim by Chaplin that Harbison had failed to disclose "material and important facts concerning the prior judgments, lawsuits and bankruptcy con-

cerning the principals of The Harbison Group...." Chaplin demanded that Harbison return the $300,000 earnest money, plus an additional unspecified sum for costs incurred on the project.

On July 16, 1987 Chaplin commenced a state court action in South Carolina against Harbison, Friedberg and Greene. The real purpose of the suit was to proceed against the partnership, Harbison, but Chaplin believed that under South Carolina law it was necessary also to sue the partners Friedberg and Greene. It was subsequently discovered that the relevant pleading rules had been changed by statute prior to the filing of the lawsuit, and that Chaplin could have simply sued Harbison. Upon coming to this realization, Chaplin moved to dismiss Friedberg and Greene from the action. The defendants did not consent to this dismissal. Rather, they removed the case to the United States Bankruptcy Court for the District of South Carolina. This occurred in August 1987. Friedberg and Greene have never been dismissed from the action.

Subsequently, Friedberg filed a motion to transfer the venue of the action to the bankruptcy court for the Southern District of New York. While this motion was pending, Chaplin filed a motion to sever the claim against Friedberg and to have the proceeding against Harbison and Greene remanded to the state court, or in the alternative for the South Carolina bankruptcy court to abstain from hearing the entire action and to remand the entire action to the state court. On September 22 the South Carolina bankruptcy court ruled that the proceeding should be transferred to the bankruptcy court for the Southern District of New York. An order to this effect was signed on September 30.

In the time between the ruling of the South Carolina bankruptcy court and the issuance of the order, Chaplin filed a second state court action in South Carolina to recover the earnest money deposit. In this action only Harbison was named as a defendant. On January 6, 1988 the South Carolina state court directed that the action should be held in abeyance "pending a deci-sion of the Federal Bankruptcy Court in New York."

On February 17, 1988 the New York bankruptcy court denied a motion by Chaplin to dismiss the proceeding against Harbison, Friedberg and Greene from the docket of that court.

The instant motion is one to withdraw from the New York bankruptcy court the proceeding of Chaplin against Harbison, Friedberg and Greene and to have this proceeding lodged in the district court. The motion was filed by Chaplin on May 2, 1988. The basis for the motion is the claim that the proceeding is a traditional state law cause of action which is what is known as a "non-core" proceeding. Chaplin claims the right to jury trial.

Harbison, Friedberg and Greene oppose the motion on the ground that the proceeding is a core proceeding and that Chaplin is not entitled to a jury trial.

## DISCUSSION

The Bankruptcy Amendments and Federal Judgeship Act of 1984 established a distinction between "core" proceedings and other types of proceedings. An illustrative list of core proceedings is given in 28 U.S. C. § 157(b)(2). Such core proceedings include matters concerning administration of the estate, counterclaims by the estate against persons filing claims against the estate, proceedings to determine or avoid preferences, objections to discharge, etc.

The statute expressly states that a determination that a proceeding is "not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Bankruptcy judges may enter final orders in "core" proceedings, subject to appellate review by the district court. 28 U.S.C. §§ 157(b)(1), 158. For non-core proceedings, a bankruptcy judge may only enter a final order if the parties consent. Otherwise, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. The district court must review de novo any findings or conclusions for which opposi-

**6**

tion is submitted. 28 U.S.C. §§ 157(c)(1) and (2).

A determination whether a matter is a core proceeding is to be made by the bankruptcy judge under 28 U.S.C. § 157(b)(3), which states:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

Pursuant to 28 U.S.C. § 157(a), district courts are authorized to refer to bankruptcy judges for the district "any or all cases under title 11 and any or all proceedings ... arising in or related to a case under Title 11." The Southern District of New York entered a standing order on July 10, 1984 referring all such matters to the bankruptcy judges for this district.

Withdrawal of such reference is governed by 28 U.S.C. § 157(d) which states that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown....

Either core or non-core proceedings may be withdrawn by the district court. However, whether the matter is a core proceeding is a significant factor in making the withdrawal decision, especially in cases which might involve a jury trial. As already described, non-core proceedings are reviewed de novo by the district court where the parties have not consented to the entry of a final judgment by the bankruptcy court. As such, an anomalous situation is presented where non-core proceedings in the bankruptcy court involve a jury. A jury trial can be held in the bankruptcy court. In a non-core proceeding, the district court, on review, would be evaluating de novo findings of fact made by a jury. This anomaly has led at least one district court to withdraw reference in such a situation, stating that the "court recognizes that this result leads to automatic withdrawal of any non-core proceeding where a jury trial is timely demanded." *Pied Piper*

*Casuals, Inc. v. Insurance Company of the State of Pennsylvania,* 72 B.R. 156, 159–160 (Bankr. S.D.N.Y. 1987) (Sweet, J.)

The bankruptcy court below has not made any determination whether this matter is a core proceeding. While nothing in the relevant statutes would appear to prohibit the district court from making this determination in the first instance, the more prudent course of action is to allow the bankruptcy court to make that initial determination. The bankruptcy court is more familiar than this court with the underlying bankruptcy proceedings involving Friedberg, and is therefore in a better position to determine whether this adversary proceeding would constitute a core proceeding. This determination is critical to any decision by this court whether to withdraw the proceeding.

The matter is remanded for a ruling in accordance with this opinion.

SO ORDERED.