Bobbie G. BAYLESS, Trustee on Behalf of the Bankruptcy Estates of Freeman Dale Crabtree, Linda Catherine Crabtree, the Orchard Company, Catherine Dianne Crabtree Trust and David Lynn Crabtree Trust, Plaintiffs,

v.

Catherine Dianne CRABTREE, Through Catherine ADAMS Guardian of Her Estate and David Lynn Crabtree, Defendant.

Adv. No. 88–0281–TS.
Bankruptcy Nos. 87–9110–TS, 87–9114–TS.
No. CIV–89–1337–A.

United States District Court, W.D. Oklahoma.

Dec. 4, 1989.

Jackie L. Hill, Jr. and Michael Paul Kirschner, Hastie & Kirschner, Oklahoma City, Okl., for Bobbie G. Bayless, trustee.

Richard R. Bailey and Janice D. Loyd, McClelland, Collins, Bailey, Bailey & Bellingham, Oklahoma City, Okl., for plaintiffs.

William B. Rogers, Carla J. Sharpe, William B. Rogers & Associates, Oklahoma City, Okl., for defendant.

Carol Park Wood and Michael H. Freeman, Oklahoma City, Okl., U.S. Trustees.

Brooke S. Murphy, Clyde A. Muchmore, Harvey D. Ellis, Jr., and Karen Eby, Crowe & Dunlevy, Oklahoma City, Okl., intervenors, Campbell Group.

Bobbie Bayless, Bayless & Stokes, Houston, Tex., Trustee for Estates.

### ORDER

ALLEY, District Judge.

The defendants, Catherine Dianne and David Lynn Crabtree (Crabtree Children), appeal from an order of the Honorable John Teselle, United States Bankruptcy Judge, styled Order Concerning Ownership of Property, Modifying Preliminary Injunction Order, and Granting Permanent Injunction (Permanent Injunction Order). The Court properly exercises jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

The Crabtree Children challenge the Bankruptcy Judge's Order on several grounds. Generally, they contend that the Permanent Injunction Order cannot stand because the Bankruptcy Judge: (1) lacked jurisdiction over the subject matter; (2) denied them a trial by jury guaranteed by the seventh amendment and a fair hearing guaranteed by the due process clause of the fifth amendment; (3) erred in his determination that the purported gift of the property at issue is invalid under Oklahoma law; (4) erred in ordering the turnover of the contested property, in view of the Trustee's burden of proof to establish that the property is, in fact, property of the debtors' estates; and (5) erred in admitting into evidence certain materials generated in related state court litigation.

Having carefully considered the briefs and other pertinent materials, the Court finds that, in all respects, the Crabtree Children's challenge is without merit. Accordingly, the Bankruptcy Judge's Permanent Injunction Order is AFFIRMED.

### I. STANDARD OF REVIEW

In reviewing a Bankruptcy Judge's decision, the Court functions as an appellate court and is authorized to affirm, reverse, or modify the Bankruptcy Judge's ruling or to remand the case for further proceedings. Fed.R.Bankr.P. 8013. The Court is bound to accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous, but may examine the Bankruptcy Judge's conclusions of law de novo. *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir.1987); *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## II. SUBJECT MATTER JURISDICTION

The Crabtree Children attack the subject matter jurisdiction of the Bankruptcy Judge on two principal grounds: first, they contend that the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA) are unconstitutional; and second, they contend that, even if the BAFJA is constitutional, there was no subject matter jurisdiction as to the adversary dispute at bar because a determination of the ownership of property cannot be the basis for a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2). Under the weight of authority, the two arguments must fail.

The Crabtree Children's challenge to the constitutionality of the BAFJA is somewhat ill-defined. Apparently, the Crabtree Children contend that the BAFJA is unconstitutional because it permits federal district courts to render final judgments on state-law causes of action, under circumstances where diversity is lacking, simply because these causes of action are "related to" bankruptcy proceedings. *See generally* 28 U.S.C. §§ 157(c), 1334(b). That is, the Crabtree Children contend that the BAFJA is unconstitutional in that it purports to confer jurisdiction on district courts that exceeds the limits of Article III.[1]

As framed, the Crabtree Children's constitutional challenge is meritless. Principally, the Crabtree Children base their challenge on the Supreme Court's decision in *Northern Pipeline Const. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Northern Pipeline*, the Supreme Court invalidated key jurisdictional provisions of the Bankruptcy Reform Act of 1978 on the ground of separation of powers. These provisions permitted non-Article III Bankruptcy Judges, without life tenure and protection against salary diminution, to render final judgments in traditional state-law contract actions. 458 U.S. at 87, 102 S.Ct. at 2880; *See Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985).

The *Northern Pipeline* decision is, to be sure, somewhat abstruse and open to considerable interpretation. However, it is quite clear that the Supreme Court in *Northern Pipeline* did not bar federal dis-

---

1. Arguably, the Crabtree Children's jurisdictional challenge is focused on the Bankruptcy Judge as well. The Crabtree Children may contend that, because certain state-law issues had to be resolved in the Trustee's turnover action (in particular the question of ownership of the Oklahoma City and Rhode Island Property) the non-Article III Bankruptcy Judge was without power to render final judgment in the proceeding under the teaching of *Northern Pipeline Const. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). This argument is not without support. Ferriell, *Constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984*, 63 Amer.Bankr. L.J. 109, 144–46 (Spring 1989) (noting that *Northern Pipeline* "raises serious questions" as to the power of Bankruptcy Judges to adjudicate turnover proceedings); *see St. George Island, Ltd. v. Pelham*, 104 B.R. 429, 430 (Bankr.N.D. Fla.1989) (suggesting that the Supreme Court "undoubtedly feels that Congress did not cure all the constitutional ills" in enacting the BAFJA).

However, at least on the facts of this adversary dispute, the Court finds the argument to be misguided. First, it takes as a working premise that the result in *Northern Pipeline* was controlled by the state-law nature of the rights at issue. Ferriell, *supra*, at 146. Yet, recent analysis of *Northern Pipeline* by two circuit courts of appeal strongly suggests to the contrary. *See In re Mankin*, 823 F.2d 1296, 1308–09 (9th Cir. 1987) (noting that "the crucial consideration is not which sovereign created the right, but rather whether Congress utilized the right for federal purposes"), *cert. den.*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987) (noting that "[i]t is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference"). Second, the legislative history lends support to the view that state-law elements take on a federal character when raised in the context of a turnover proceeding pursuant to 11 U.S.C. § 542. *See In re Mankin*, 823 F.2d at 1309 n. 5 (quoting 130 Cong.Rec. H1110 (daily ed. Mar. 20, 1984) (statement of Rep. Kastenmeier)). Therefore, the Crabtree Children's first jurisdictional challenge fails in any event.

trict courts (vested with the judicial power under Article III) from adjudicating state-law matters related to proceedings in bankruptcy. Indeed, the *Northern Pipeline* Court in a footnote discussing the state-law contract action at issue noted: "This claim may be adjudicated in a federal court on the basis of its relationship to the petition for reorganization." 458 U.S. at 72 n. 26, 102 S.Ct. at 2872 n. 26; *see In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1285 (10th Cir.1984) (noting that the jurisdictional bar of *Northern Pipeline* is "quite limited"; it provides for the final adjudication by an Article III court of state common law causes of action that are related to bankruptcy proceedings). Moreover, in their constitutional analysis, the Crabtree Children assume that their state-law action as to the ownership of the property at issue is merely "related to" the instant bankruptcy case. As noted below, this assumption is without foundation.

■ In their second challenge to jurisdiction, the Crabtree Children contend that the instant adversary dispute is not a core proceeding and, consequently, the Bankruptcy Judge lacked the power to enter a final judgment. A proceeding is "core" if it arises under title 11 or arises in a case under title 11. 28 U.S.C. § 157(b)(1). Only core proceedings may be finally determined by Bankruptcy Judges, subject to traditional appeal to district court. *See, e.g., In re Mankin*, 823 F.2d 1296, 1298 (9th Cir.1987), *cert. den.*, 108 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). By definition, a proceeding that is simply related to a case under title 11 is noncore. *See, e.g.*, 1 L. King, *Collier on Bankruptcy* ¶ 3.01[2][b][ii], at 3–37 (15th ed. 1989) [hereinafter 1 *Collier*].

The Bankruptcy Judge expressly concluded that his exercise of jurisdiction was proper, noting that the Trustee's turnover action pursuant to 11 U.S.C. § 542 is a core proceeding. The Crabtree Children acknowledge that, under the literal language of the statute, turnover actions are indeed core proceedings. *See* 28 U.S.C. § 157(b)(2)(A), (E). They assert, however, that the Bankruptcy Judge's conclusion as

to the propriety of his jurisdiction is flawed because it ignores the true substance of this adversary dispute. According to the Crabtree Children, the central issue in this dispute is whether the Oklahoma City and Rhode Island Property are property of the debtors' estates and that issue cannot form the basis of a core proceeding because its resolution "hinges solely on state law." *In re Sturm*, 66 B.R. 325, 328 (Bankr.N.D.Ill. 1986); *see In re GEX Kentucky, Inc.*, 85 B.R. 431, 433–34 (Bankr.N.D.Ohio 1987). *See generally In re National Equipment & Mold Corp.*, 64 B.R. 239, 245 (Bankr.N. D.Ohio 1986) (noting that "[i]t is well established that the determination of whether or not the estate has any interest in property is made pursuant to state law"). In this regard, the Crabtree Children contend that, in reaching his conclusion as to jurisdiction, the Bankruptcy Judge ignored the allegedly separate proceeding presented by their counterclaim—a proceeding where they say the state-law ownership issue was squarely set out.

■ The Crabtree Children's second jurisdictional challenge must also fail. To be sure, the question of ownership is of central importance in this adversary dispute. This is true whether or not the Crabtree Children's counterclaim is deemed a separate proceeding, for the ownership question must be resolved as a "threshold" matter in virtually every turnover proceeding. *In re National Equipment & Mold Corp.*, 64 B.R. at 245. Also, there can be little doubt that the ownership question is largely governed by state law. However, neither the *Northern Pipeline* decision, *supra*, nor the bankruptcy laws, generally, makes the state-law content of a proceeding determinative of its status as core or noncore. *See In re Mankin*, 823 F.2d at 1309; *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987); 28 U.S.C. § 157(b)(3).

In this regard, there is sufficient case law post-dating *Northern Pipeline* in which courts have found that, under certain circumstances, the state-law ownership issue may be adjudicated with finality by non-Article III Bankruptcy Judges. For

example, in *In re Jacobs,* 48 B.R. 570 (Bankr.S.D.Cal.1985), a mortgagee filed an adversary proceeding in the nature of a declaratory judgment action against the debtor, contending that the residence that the debtor shared with his nondebtor spouse was community property and, thus, property of the estate. The Bankruptcy Judge noted the importance of the resolution of this ownership dispute to the proper administration of the debtor's estate and concluded accordingly that the mortgagee's proceeding was core. 48 B.R. at 572; *see In re Henstra,* 75 B.R. 260, 263–64 (Bankr. D.Minn.1986) (finding that whether certain itemized collateral was property of a Chapter 13 debtor or the corporation of which he was president was a core matter to be resolved in the first instance by the Bankruptcy Judge).

Also, the Bankruptcy Code specifically provides that: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). In enacting section 157(b)(3), Congress wished to make express that Bankruptcy Judges were not to rely on the state-law content of proceedings alone in making their core-noncore determinations. *See* 1 *Collier, supra,* at ¶ 3.01[2][c]. Accordingly, the Court concludes that the Bankruptcy Judge properly exercised jurisdiction over the instant adversary dispute.

### III. JURY TRIAL

The Crabtree Children contend that the Bankruptcy Judge committed error when he failed to allow them a jury trial. Specifically, the Crabtree Children contend that the Bankruptcy Judge infringed on their rights under the seventh amendment. That amendment provides in pertinent part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Commencing with their first responsive pleading, the Crabtree Children have consistently demanded a jury trial, presumably, as to all the matters at issue in this adversary dispute.

The Court has passed on this question before. By Order dated August 9, 1989, the Court denied the Crabtree Children's motion to stay, which was aimed at preventing the sale of certain personal property at issue in this adversary dispute. In the context of that Order, the Court considered and rejected the Crabtree Children's seventh amendment contention. Specifically, the Court concluded that the Crabtree Children's reliance on the Supreme Court's recent decision in *Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) as the principal basis for their asserted right to trial by jury was misplaced.

■■■ Briefly stated, the Supreme Court in *Granfinanciera* held that, notwithstanding Congress' designation of fraudulent conveyance actions as core proceedings, nondebtors who had not submitted claims against the bankruptcy estate were entitled to a jury trial upon proper demand when sued by a trustee to recover an allegedly fraudulent transfer of money. 109 S.Ct. 2787–88. The core-noncore distinction was largely abandoned by *Granfinanciera* as an important factor in seventh amendment jury trial determinations. *See In re Edwards,* 104 B.R. 890, 898 (Bankr.E.D.Tenn. 1989); *In re Friedberg,* 87 B.R. 3 (Bankr.S. D.N.Y.1989). In other words, the fact that a proceeding is core no longer stands as an automatic bar to assertions of a right to trial by jury. Hence, the Crabtree Children's contention in this turnover proceeding.

While the Court has given due consideration to the extensive briefing of the parties on the seventh amendment question, in substance, the Court adheres its conclusion of August 9. Most significantly, the Court finds that, unlike the nondebtors in *Granfinanciera,* the Crabtree Children consented to the equitable jurisdiction of the Bankruptcy Judge by filing their counterclaim.

■■■ Under settled precedent, creditors subject themselves to the equitable power of Bankruptcy Judges by filing proofs of claim against the bankruptcy estate. *See Katchen v. Landy,* 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966); *Bed-*

*ford Computer Corp. v. Ginn Pub., Inc.*, 63 B.R. 79, 81–82 (D.N.H.1986); *In re Baldwin–United Corp.*, 48 Bankr. 49, 54 (Bankr.S.D.Ohio 1985). Although they may be legal and otherwise amenable to jury trial under the seventh amendment, contrary assertions of right by trustees or debtors are open to adjudication in equity by Bankruptcy Judges under their power to afford complete relief as to the controversy at bar. *See Granfinanciera*, 109 S.Ct. at 2799 n. 14; *Katchen*, 382 U.S. at 338, 86 S.Ct. at 477.

The Supreme Court in *Granfinanciera* affirmed this line of authority. The Court emphasized that, ultimately, the critical factor is "whether the creditor has submitted a claim against the estate." 109 S.Ct. at 2799. Following *Granfinanciera*, the courts have paid heed to this message. *See In re Edwards*, 104 B.R. at 893 & n. 4, 898; *In re Paris Industries Corp.*, 106 B.R. 344 (Bankr.D.Me.1989); *see also In re Fort Lauderdale Hotel Partners Ltd.*, 103 B.R. 335, 336 (Bankr.S.D.Fla.1989) (expressly adopting as a component of the jury trial analysis a determination as to "whether the defendant has submitted to the jurisdiction of this Court by filing a Proof of Claim").

 The Crabtree Children acknowledge that their counterclaim may be the equivalent of an informal proof of claim. *See* Opening Brief, at 22. The term "claim" under the bankruptcy laws includes virtually all legal or equitable rights to payment and is broadly construed. *See In re Thomas*, 12 B.R. 432, 433 (Bankr.S.D. Iowa) (noting that the term "could not be broader"); 2 L. King, *Collier on Bankruptcy* ¶ 101.04 (15th ed. 1989); 11 U.S.C. § 101(4). Moreover, written proofs of claim need not adhere to the official forms to be acceptable. *See* 8A C.J.S. *Bankruptcy* § 276 (1988). Furthermore, the Court notes that the principle of jurisdiction by consent discussed above has been held applicable where, instead of a proof of claim, the creditor asserts a claim for affirmative relief. *See In re Panama–Williams Corp.*, 235 F.Supp. 729, 733 (S.D.Tex.1964). Thus, in any event, by filing their counter-claim, the Crabtree Children submitted to the equitable jurisdiction of the Bankruptcy Judge.

 The Crabtree Children's argument to the contrary is self-defeating. Citing Bankruptcy Rule 7013, the Crabtree Children contend that their counterclaim was compulsory and, consequently, their submission of it provides no basis for inferring consent as to the jurisdiction of the Bankruptcy Judge. On its face, however, Rule 7013 is inapposite. As a general matter, Rule 7013 incorporates Rule 13 of the Federal Rules of Civil Procedure as to adversary proceedings, but it only requires the filing of a counterclaim where the action to be asserted against debtors, their property, or estates "arose after the entry of an order for relief." In a voluntary Chapter 11 case, like this one, the entry of an order for relief coincides with the filing of the petition in bankruptcy. The compulsory counterclaim aspect of Rule 7013 is accordingly not applicable here because it is undisputed that the purported transfer of property giving rise to the Crabtree Children's counterclaim antedated the filing of the petition in this bankruptcy case. *See generally* 9 L. King, *Collier on Bankruptcy* ¶ 7013.04 (15th ed. 1989).

## IV. DUE PROCESS

The Crabtree Children contend that the Bankruptcy Judge's adjudication of this adversary dispute deprived them of property without due process. First, they contend that the Bankruptcy Judge's adjudication was not consonant with due process because he rendered a determination as to ownership of the Oklahoma City and Rhode Island Property without subject matter jurisdiction and without granting them a right to trial by jury. In view of the Court's rulings above on the jurisdiction and jury trial questions, this contention is meritless.

 Second, the Crabtree Children contend that the Bankruptcy Judge denied them due process because he admitted certain evidence in the preliminary injunction hearing before they had an opportunity to answer or appear in the proceeding. This contention must also fail. As a general

matter, the fact that the Crabtree Children had not filed their answer when the evidence was admitted is immaterial. The Crabtree Children were served on the second day of the preliminary injunction hearing and participated thereafter. As for evidence admitted on the first day, the Bankruptcy Judge permitted the Crabtree Children to preserve their objections until they had an opportunity to review the evidence. *See* Transcript, at 15–16 (Hearing: July 29, 1988). Accordingly, the fundamental tests of due process, notice and an opportunity to be heard, were satisfied. *See Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 782 (8th Cir.1987); *Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir.1985).

## V. GIFT DETERMINATION

The Crabtree Children challenge the merits of the Bankruptcy Judge's determination that the purported gift of the Oklahoma City and Rhode Island Property to the Crabtree Children is invalid. Principally, they argue that the Bankruptcy Judge failed to properly apply Oklahoma law in reaching his determination.

██ The parties do not dispute the basic legal principles. The requisite elements of a valid and perfected inter vivos gift are: (1) an unequivocal donative intent upon the part of the donor; (2) delivery of the subject matter of the gift; and (3) an absolute and irrevocable relinquishment by the donor of ownership and dominion of the subject matter of the gift. *See Thomas v. Bank of Oklahoma*, 684 P.2d 553, 554–56 (Okla.1984); *In re Estate of Stinchcomb*, 674 P.2d 26, 30 (Okla.1983); *see also* 38 Am.Jur.2d *Gifts* §§ 17, 27 (1968).

██ The Crabtree Children contend that the Bankruptcy Judge deviated from these principles in his consideration of the so-called conveyance documents (the four documents evidencing the alleged conveyance of the Oklahoma City and Rhode Island Property to the Crabtree Children). Specifically, they allege that the Bankruptcy Judge treated the conveyance documents as the asserted gifts themselves and, thereby, imposed a requirement not found in the governing law, that gifts be in

writing. The Crabtree Children seem to contend that this alleged error led the Bankruptcy Judge to the wrong result on the gift question because F. Dale Crabtree has admitted that he possessed and exercised control over the conveyance documents after their execution.

However, the Crabtree Children's argument on this point is untenable. The Bankruptcy Judge entered a specific finding of fact as to F. Dale Crabtree's exercise of dominion and control over the property at issue. Specifically, this finding states: "At all times, both prior to and subsequent to the dates of the purported transfers, ... F. Dale Crabtree exercised complete dominion and control over the Rhode Island Property and Oklahoma City Property." Permanent Injunction Order, at 20 (finding # 16). This finding alone was sufficient to negate the Crabtree Children's assertion as to a valid inter vivos gift. *See, e.g.*, 38 Am.Jur.2d *Gifts* § 27 (noting that an inter vivos gift is generally not perfected if the donor retains control of the property). The Bankruptcy Judge was not required to enter express findings on the separate but related issue of donative intent or, to the extent it was not addressed by his dominion and control finding, delivery.

██ Moreover, far from being misguided or clearly erroneous, the Bankruptcy Judge's finding as to dominion and control was amply supported by the evidence. The Bankruptcy Judge considered F. Dale Crabtree's conduct as to the conveyance documents as only one factor (albeit a "significant" one) among several other factors bearing on the invalidity of the purported inter vivos transfer. Permanent Injunction Order, at 17. For example, in the case of the Oklahoma City Property, F. Dale Crabtree testified that, while his family had use of the property, which consisted largely of household furnishings, he retained dominion and control over the property as head of the household. *See* Transcript, at 444 (Hearing: Aug. 3, 1989). This admission is not insignificant, in view of the Bankruptcy Judge's finding that F. Dale Crabtree's testimony was generally "self-serving" and "substantially without credibility." Order

Regarding Motion For Preliminary Injunction, at 9.

Also, the record indicates that F. Dale Crabtree controlled the Orchard Company, and that company conducted its affairs in a manner inconsistent with the alleged transfer of the Rhode Island Property to the Crabtree Children as individuals. *See* Transcript, at 483 (testimony of Charles Davis Morrison) (Hearing: Feb. 13–16, 1988). As memorialized in two of the conveyance documents, this alleged transfer took place no later than the summer of 1984.

Yet, George W. Bailey acting on behalf of the sole remaining partners of the Orchard Company, the debtors David Lynn and Catherine Dianne Crabtree Trusts, and in concert with F. Dale Crabtree, mortgaged the Rhode Island Property to the Metro Bank, N.A. in 1987. As the Bankruptcy Judge specifically found: "This action was inconsistent with the claimed individual ownership of this property by the Crabtree Children." Permanent Injunction Order, at 20 (finding # 14); *see Grimsley v. Grimsley*, 632 S.W.2d 174, 179 (Tex.Ct. App.1982) (where party's use of securities alleged to constitute an inter vivos gift as collateral for a loan indicated a failure to "relinquish total dominion and control over such stock").

Further, depreciation of the Rhode Island Property was noted on the 1984 and 1985 tax returns of the Orchard Company's partners (then, F. Dale and Linda Crabtree and the Crabtree Children's Trusts)—a fact that the Bankruptcy Judge reasonably found to be at odds with the purported transfer of the Rhode Island Property to the Crabtree Children as individuals. Permanent Injunction Order, at 19 (finding # 13); *see* Transcript, at 75 (testimony of George W. Bailey) (Hearing: Feb. 13–16, 1989). In short, with little difficulty, the Court concludes that the Bankruptcy Judge's determination that the purported gift of the Oklahoma City and Rhode Island Property to the Crabtree Children is invalid rests on a sound application of Oklahoma law.

## VI. TURNOVER DETERMINATION

 Accepting for purposes of argument that the Bankruptcy Judge entered a proper determination on the gift question, the Crabtree Children contend that the Bankruptcy Judge erred in ordering the turnover of the Oklahoma City and Rhode Island Property because the Trustee did not carry her burden of demonstrating that this property is property of the debtors' estates. To be sure, the Trustee must bear this burden. *See In re H. Magen Co.*, 10 F.2d 91, 96 (2d Cir.1925); 4 L. King, *Collier on Bankruptcy* ¶ 542.02 (15th ed. 1989). However, on the facts of this proceeding, this contention is simply fatuous. Only the Crabtree Children maintain that the property at issue is not property of the debtors' estates. In prevailing on the gift question, the Trustee necessarily marshalled sufficient evidence to establish that the property at issue is property of the debtors' estates.

## VII. EVIDENTIARY RULINGS

Lastly, the Crabtree Children contend that the Bankruptcy Judge erred in admitting into evidence certain records of a related proceeding in the district court for Oklahoma County, styled *Campbell v. Crabtree*, No. CJ–86–4434. In that litigation, the state court sought to award the Campbell Group title to the Rhode Island Property at issue here. The Bankruptcy Judge admitted into evidence certain orders and findings of fact and conclusions of law of the state court and certain transcripts of the state court proceedings.

 The Crabtree Children argue that these records were hearsay because the Crabtree Children were not parties to the state court proceeding and the records were admitted for a substantive purpose, that is, for the truth of the matter asserted. *See generally* Fed.R.Evid. 801(d). The factual basis of the Crabtree Children's argument is vigorously disputed by the Campbell Group and the Trustee. The Court finds that the Bankruptcy Judge did make substantive reference to the state court materials. The Court need not rule, however, on the purported nonparty status of the Crabtree Children. Even if the

**308**

Crabtree Children were not parties in the state court proceeding, the Court concludes as a matter of law that the court records were not inadmissible hearsay.

Under evolving principles of judicial notice, the Bankruptcy Judge's reference to records of related litigation in state court was permissible. *See St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir.1979) (noting that "it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to matters at issue"); 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 201[03], at 201–29 (1989) (stating that "[c]ourts are particularly apt to take notice of material in court files"). Moreover, the Bankruptcy Judge expressly noted that his judgment would rest on "a trial *de novo* on the question of the ownership" of the property at issue and, in this regard, he permitted the Crabtree Children to object to the admission into evidence of particular records of the state court proceeding and to offer rebuttal evidence. Permanent Injunction Order, at 3. Consequently, the Crabtree Children were not prejudiced by the Bankruptcy Judge's exercise of judicial notice. *See United States v. Estep,* 760 F.2d 1060, 1063–64 (10th Cir. 1985). Moreover, the transcripts of testimony in the state court proceeding were admissible, at least in part, as nonhearsay prior inconsistent statements. Fed.R.Evid. 801(d)(1)(A); *see* Transcript, at 480–82 (testimony of Charles Davis Morrison) (Hearing: Feb. 13–16, 1989). Accordingly, the Court finds the Crabtree Children's evidentiary challenge to be without merit.

### VIII. CONCLUSION

Having considered the merits, then, the Court concludes that the Crabtree Children's contentions of error cannot be sustained. The Permanent Injunction Order is accordingly AFFIRMED.

IT IS SO ORDERED.