### In re ALLIED COMPANIES, INC., Debtor.

### ALLIED COMPANIES, INC., Plaintiff,

v.

### HOLLY FARMS FOODS, INC., Defendant.

No. 89–4497–RAV–11.
Adv. No. 91–130.
Misc. No. 91–2–1–IP.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 17, 1991.

---

John C. Davis, C. Richard McQueen, James C. Frenzel, Greene, Buckley, Jones & McQueen, Atlanta, Ga., for movant.

James S. Kowalik, Indianapolis, for debtor.

## ENTRY

BARKER, District Judge.

Allied Company, Inc. ("Allied") filed a voluntary Chapter 11 petition for relief on June 22, 1989. On March 26, 1991, Allied filed a complaint initiating an adversary proceeding demanding recovery in the amount of $606,586.95 from defendant Holly Farm Foods, Inc., ("Holly Farms") on the ground that Holly Farms had received from Allied certain transfers alleged to be preferential under 11 U.S.C. Section 547.

Holly Farms filed its answer, counterclaim, and a jury demand on April 25, 1991. By its counterclaim, Holly Farms seeks reclamation of certain goods or alternatively that its claim be deemed a priority claim. Currently before the court is Holly Farms' May 2, 1991 Motion for Withdrawal of Reference.

## DISCUSSION

■ In support of its motion for withdrawal of reference, Holly Farms argues that it is entitled to a jury trial and that since bankruptcy judges are not empowered to conduct jury trials, cause exists for a withdrawal of reference. Allied responds that since Holly Farms filed a counterclaim, it submitted itself to the equitable jurisdiction of the bankruptcy court, in effect waiving any rights to a jury trial, and that in the alternative, bankruptcy judges are authorized to conduct jury trials in core proceedings. Since the court agrees with Allied that Holly Farms has no right to a jury trial in light of its filing of a counterclaim, the court need not reach the issue of whether bankruptcy judges may conduct jury trials.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court established a three-step analysis for determining whether the Seventh Amendment imposes a jury requirement in a bankruptcy action.

> "First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted).... If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Granfinanciera*, 109 S.Ct. at 2790 (footnote omitted).

In connection with Allied's complaint to recover allegedly preferential transfers, it appears as an initial matter, that the first two steps of the analysis prescribed in *Granfinanciera* are satisfied and that Holly Farms' jury demand therefore should be honored. "There is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th–century England.... These actions, like all suits at law, were conducted before juries." *Id.*, 109 S.Ct. at 2790–91. Moreover, since a remedy for Allied exists at law, this action cannot be maintained in equity. *Id.*, 109 S.Ct. at 2794.

However, the parties disagree about whether Holly Farms lost its entitlement to a jury by filing a counterclaim. In *Granfinanciera*, 109 S.Ct. at 2787, the Supreme Court held that under the Seventh Amendment to the United States Constitution, "a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." In *Langenkamp v. Culp*, —— U.S. ——, 111 S.Ct. 330, 331–332, 112 L.Ed.2d 343 (1990) (per curiam), the Supreme Court ruled, "Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the bankruptcy court. Consequently, they were not entitled to a jury trial on the trustee's preference action."

The issue is thus whether a counterclaim constitutes a claim, as that term was used in *Granfinanciera* and *Langenkamp*. The problem in resolving this issue comes in trying to reconcile *Granfinanciera* with *Langenkamp* and in understanding the Supreme Court's rationale for finding an exception to the Seventh Amendment jury requirement in order to apply that rationale to the facts of this case.

■ The Seventh Amendment does not require a jury for the trial of a legal cause of action involving public rights. *Granfinanciera*, 109 S.Ct. at 2796. In *Granfinanciera*, 109 S.Ct. at 2798, the Supreme Court indicated that those who filed claims against the bankruptcy estate lost their

entitlement to a jury because the bankruptcy court had either actual or constructive possession of the bankruptcy estate, and the bankruptcy court process of allowing and disallowing the claims of creditors can implicate the adjudication of public as opposed to private rights.

> "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages.... The former may well be a 'public right,' but the latter obviously is not."

*Id.*, 109 S.Ct. at 2798, n. 12 (quoting *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) (opinion of Brennan, J.)). The *Granfinanciera* Court did not, however, conclude "that the restructuring of debtor-creditor relations is in fact a public right." *Id.*, 109 S.Ct. at 2797, n. 11.

In *Beard v. Braunstein*, 914 F.2d 434 (3rd Cir.1990), the Third Circuit concluded in an action brought by a trustee to recover rents that a defendant who counterclaimed for "certain set-offs, mostly on account of the allegedly poor condition of the premises," 914 F.2d at 436, was entitled to a jury trial. Analyzing the differences between public and private rights, the court concluded that the defendant's action was a private contractual one, for which he was therefore entitled to a jury trial. *Id.*, 914 F.2d at 441.

The case at bar thus appears to turn on whether the counterclaim filed by Holly Farms places this action in the realm of public as opposed to private rights. In *Granfinanciera*, the Supreme Court analyzed fraudulent conveyance actions in light of the public versus private rights distinction and concluded that they "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res. They therefore appear matters of private rather than public right." *Granfinanciera*, 109 S.Ct. at 2798 (citation and footnote omitted).

In contrast, as between private contractual claims and public claims to a share of a bankruptcy res, the counterclaim brought by Holly Farms would most resemble public rights. The relief sought by Holly Farms in its counterclaim is either a reclamation of certain goods or the awarding to Holly Farms of a priority claim under 11 U.S.C. Section 503(b) or the placement of a lien against the plaintiff's unencumbered property in the amount of the dollar value of the goods, and these claims are being asserted, in the main, against the bankruptcy estate.

■ It would be tempting to use this case to attempt to devise or at least further develop a bright line rule on jury entitlements in bankruptcy cases. But this court need not, and so it will not, rule that all counterclaims are sufficient under *Granfinanciera* and *Langenkamp* to invalidate jury demands. However, this court can conclude that where, as here, the relief sought implicates the bankruptcy court " '... process of allowance and disallowance of claims,' " and requires the court to take "action integral to the restructuring of debtor-creditor relations," *Granfinanciera*, 109 S.Ct. at 2799, this counterclaim for reclamation of goods or for a priority claim or lien invokes what are apparently public, rather than private, rights and that therefore, no jury is required by the Seventh Amendment.

Despite the apparent ease with which the court reaches this conclusion, the court recognizes that the use of the term "public rights" is still problematic. The dilemma created in *Granfinanciera* and not explicitly resolved in *Langenkamp* causes lingering uncertainties. The term "public rights" must be read broadly in order to reconcile the Court's decision that one who submits a claim loses a jury entitlement with the only applicable exception given in *Granfinanciera* (the public rights exception) to the Seventh Amendment jury requirement. This is especially true in light of the Court's additional holding that the

mere fact of the assignment of an issue to bankruptcy court is not sufficient to explain the absence of a jury requirement. *Granfinanciera*, 109 S.Ct. at 2795.

The logical inference to be drawn from *Granfinanciera*'s three-step analysis[1] is that there are actions to which the Seventh Amendment jury requirement does not apply, despite the fact that the actions are analogous to those traditionally brought in courts of law (step one) and seeking legal remedies (step two), actions for which juries would otherwise have been required but for the exception represented by step three of the *Granfinanciera* analysis. The propriety of drawing this inference was confirmed in *Langenkamp*, where the Court ruled that certain creditors who had filed claims against the bankruptcy estate did not have a right to a jury trial, distinguishing them from those creditors who maintained a right to a jury trial, not on the basis of some difference in the actions brought but rather on the fact of a filing of a claim against the estate. 111 S.Ct. at 331.

■ In *Granfinanciera*, the Court reached the crucial third step of determining whether the Seventh Amendment required a jury trial after having determined that the trustee's suit to recover an allegedly fraudulent transfer was analogous to an action at law and sought a legal remedy. The Court defined the exception to the Seventh Amendment jury requirement in such circumstances by invoking the distinction between public and private rights which had been discussed in a number of prior Supreme Court decisions. *See Granfinanciera*, 109 S.Ct. at 2795–2797. A public right is defined as a statutory right "closely intertwined with a federal regulatory program Congress has power to enact" or a right belonging to or existing against the Federal Government. *Id.*, 109 S.Ct. at 2797. As noted above, however, the Court does "not suggest that the restructuring of the debtor-creditor relations is in fact a public right." *Id.*, 109 S.Ct. at 2797, n. 11.

Having concluded this analysis, the Supreme Court explained how the "decision in

*Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), ... confirms this analysis." *Granfinanciera*, 109 S.Ct. at 2798. In this part of its discussion, the Court was thus ostensibly reconciling the public versus private right distinction, which it had just drawn, with cases such as *Katchen*, which "turned ... on the bankruptcy court's having 'actual or constructive possession' of the bankruptcy estate, 382 U.S., at 327, 86 S.Ct., at 471, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate." *Granfinanciera*, 109 S.Ct. at 2798 (citation omitted).

However, in ruling in *Langenkamp* that those respondents who had submitted claims against the bankruptcy estate were not entitled to jury trials, the Court relied not on that discussion in *Granfinanciera* regarding the public versus private right dichotomy, but rather on that part of the opinion reconciling *Katchen* and other cases. In fact, the term "public rights" was not even mentioned in *Langenkamp*. The Court wrote:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 59–60, and n. 14, 109 S.Ct., at 2798–2799, and n. 14 (citing *Katchen, supra*, 382 U.S., at 336, 86 S.Ct., at 476).

*Langenkamp*, 111 S.Ct. at 331.

The Court concluded: "Accordingly, 'a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.' [*Granfinanciera*, 492 U.S.], at 57–58, 109 S.Ct., at 2798–2799." *Langenkamp*, 111 S.Ct. at 331.

Thus, the Supreme Court in *Granfinanciera* discussed only the public rights doctrine as an available exception to the Seventh Amendment jury right, reconciling its decision with previous decisions in *Katchen* and other cases on the basis of the court's possession of the bankruptcy res, but the

---

1. *See supra* p. 921.

Court expressly declined to conclude that the restructuring of debtor-creditor relations was a public right. In *Langenkamp*, however, the Court concluded that those creditors who submitted claims did not have a Seventh Amendment right to a jury trial because "the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction.*" *Langenkamp*, 111 S.Ct. at 331 (citation omitted).

Perhaps *Langenkamp* could be construed as having extended the public rights doctrine to the point of including situations where the bankruptcy court is involved in the process of restructuring debtor-creditor relations, although the Court admitted in *Granfinanciera* that to do so would be controversial. *See Granfinanciera*, 109 S.Ct. at 2797, n. 11. Controversial though such an extension of the public rights doctrine might be, if it is to represent a true exception to the Seventh Amendment jury requirement in the context of bankruptcy trials, one would think that the doctrine should be understood to encompass more than actions involving the Federal Government or statutory schemes intertwined with regulatory programs, which would undoubtedly arise infrequently in the bankruptcy context.

The public rights doctrine was not mentioned in *Langenkamp*. Another way of understanding this decision might be to see it not as extending the public rights doctrine but rather as recognizing that those actions implicating the bankruptcy court's powers in the process of allowing and disallowing claims are tried in equity, and thus no jury is required. This would represent a reaffirmation of the Court's rulings in *Katchen* and other cases decided prior to the Bankruptcy Reform Act, Pub.L. No. 95–598, 92 Stat. 2549 (1978).

■ Holly Farms' counterclaim, seeking reclamation of certain goods or a priority claim or lien, does implicate these equitable powers of the bankruptcy court. Thus, even if it is improper to label this counterclaim as asserting a public right, its assertion in light of *Granfinanciera* and *Langenkamp* means that Holly Farms is not entitled to a jury trial.

This court would not be alone in finding that a counterclaim is within the type of claims which eliminate the necessity for a jury trial under *Granfinanciera* and *Langenkamp*. In *Bayless v. Crabtree*, 108 B.R. 299 (W.D. Okla. 1989), *aff'd*, 930 F.2d 32 (10th Cir.1991), the bankruptcy court ruled that a counterclaim was the sort of claim contemplated in *Granfinanciera* which resulted in a loss of entitlement to a jury trial. The court reasoned that:

> The term "claim" under the bankruptcy laws includes virtually all legal or equitable rights to payment and is broadly construed. Moreover, written proofs of claim need not adhere to the official forms to be acceptable. Furthermore, the Court notes that the principle of jurisdiction by consent ... has been held applicable where, instead of a proof of claim, the creditor asserts a claim for affirmative relief.

*Bayless*, 108 B.R. at 305 (citations omitted). The *Bayless* court concluded that by filing a counterclaim, the defendants had submitted to the equitable jurisdiction of the bankruptcy court, thereby losing their entitlement to a jury.

Holly Farms argues that *Bayless* is distinguishable because the counterclaim filed in *Bayless* was not compulsory and thus permitted an inference of consent to the jurisdiction of the bankruptcy courts and the loss of an entitlement to a jury, whereas in this case Holly Farms' counterclaim is compulsory and thus does not manifest consent to bankruptcy court jurisdiction. The *Bayless* court apparently does use an implied consent theory as a basis for finding bankruptcy court jurisdiction. *See Bayless*, 108 B.R. at 304–05.

■ Assuming that the filing of a compulsory counterclaim will not admit of any finding of consent to jurisdiction, the Supreme Court's treatment of the waiver rationale in *Granfinanciera* demonstrates that the lack of consent on the claimant's part is not dispositive. The Court specifically disclaimed the idea that a waiver ra-

tionale explained why those who filed claims forsook an opportunity for a jury trial. The Court distinguished the situation in *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), where the Court relied on a waiver rationale in holding that the Commodities Futures Trading Commission could adjudicate state law counterclaims to a federal action brought by investors.

> The Court reached this conclusion ... not on the ground that the Commission had possession of a disputed res, to which the investors laid claim, but on the ground that Congress did not require investors to avail themselves of the remedial scheme over which the Commission presided. The investors could have pursued their claims, albeit less expeditiously, in federal court. By electing to use the speedier, alternative procedures Congress had created, the Court said, the investors waived their right to have the state-law counterclaims against them adjudicated by an Article III court. Parallel reasoning is unavailable in the context of bankruptcy proceedings, because creditors lack an alternative forum to the bankruptcy court in which to pursue their claims. As *Katchen* makes clear, however, by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.

*Granfinanciera,* 109 S.Ct. at 2799, n. 14 (citation omitted). Just as a waiver theory fails to explain why those who submit claims against the bankruptcy estate lose the right to a jury trial, so too an implied consent theory is inadequate. The key to the loss of a jury trial lies not in some choice purportedly made by a claimant but rather in the fact that the bankruptcy court has possession of the estate and must invoke its equitable power in the process of allowing and disallowing claims. *Id.* at 2799. Thus, the mandatory nature of Holly Farms' counterclaim is not dispositive

and does not serve as a basis for distinguishing *Bayless.* Holly Farms' counterclaim, by which Holly Farms seeks the reclamation of certain goods or alternatively that its claim be deemed a priority claim, must still be decided by the bankruptcy court as part of "the restructuring of debtor-creditor relations." *Id.* Accordingly, since Holly Farms invoked the equitable powers of the bankruptcy court by filing this counterclaim, it no longer has an entitlement to a jury trial.

Holly Farms contends that the holding in *Bayless* is flawed and unpersuasively cites cases which predate both *Bayless* and *Granfinanciera* in support of this contention. Holly Farms then argues that the filing of a counterclaim does not operate as a waiver of objections to personal or subject matter jurisdiction. Assuming that this is true, it is beside the point. As noted above, it is by invoking the equitable powers of the bankruptcy court to order the claims of creditors that one loses the right to a jury trial.

### CONCLUSION

Having found that no jury trial is required in this action, the court hereby denies Holly Farms' motion for a withdrawal of reference.

It is so ORDERED.