In re AMERICANA EXPRESSWAYS,
INC., Debtor.

Kenneth A. RUSHTON, Trustee, Plaintiff,

v.

PHILADELPHIA FOREST PRODUCTS,
INC., Defendant.

No. 93–C–824W.

United States District Court,
D. Utah.

Dec. 13, 1993.

Kim R. Wilson, David Pinkston, Snow, Christensen & Martineau, Salt Lake City, UT, for defendant.

Michael N. Zundel, David E. Smoot, Jeffery J. Devashrayee, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, UT, Robert B. Walker, Joseph L. Steinfeld, Jr., John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, DC, for trustee.

## MEMORANDUM DECISION AND ORDER

WINDER, Chief Judge.

This matter is before the court on the Motion to Withdraw the Reference of Adversary Proceeding Number 93PC 2327 brought by defendant Philadelphia Forest Products, Inc. ("Defendant"). A hearing on the motion was held on October 20, 1993. At the hearing, Defendant was represented by Kim R. Wilson and David Pinkston. Plaintiff Kenneth A. Rushton, as Trustee for debtor

Americana Expressways, Inc., (the "Trustee") was represented by Michael N. Zundel and Jeffery J. Devashrayee. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and the facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

On July 30, 1993, the Trustee initiated this adversary proceeding in the United States Bankruptcy Court for the District of Utah to recover undercharges for freight transportation services provided to Defendant by debtor Americana Expressways, Inc. (the "Debtor"). In support of its action, the Trustee alleges that the Debtor was a common carrier[1] and that the Defendant was undercharged for transportation services in violation of § 10761 of the Interstate Commerce Act, which prohibits a carrier from charging an amount less than the tariff rates on file with the Interstate Commerce Commission ("ICC").[2] Defendant answered the complaint, asserting as defenses, *inter alia*, that the Trustee's claim is barred by unreasonableness. Answer to Compl. to Recover Freight Charges and Demand for Jury Trial [hereinafter "Answer"] at 4 (tenth defense).

Following the filing of its Answer, Defendant demanded a jury trial and filed a Notice of Non–Consent to Entry of Final Orders by the Bankruptcy Court. Defendant also filed the instant motion to withdraw the reference pursuant to 28 U.S.C. § 157(d) ("§ 157(d)") and Rule 405 of the Rules of Practice of the United States District Court for the District of Utah ("Local Rule 405"). Additionally, as

---

1. Defendant disputes this allegation. Not being relevant to the issue at hand, however, the court makes no finding on this point.

2. Section 10761(a) provides:
 Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by retaining a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.
 49 U.S.C. § 10761(a) (West Partial Revision Pamphlet 1993).

required by Local Rule 405, Defendant filed an Application for Order Directing Transmittal of Motion to United States District Court.[3]

## II. DISCUSSION

Defendant argues withdrawal of the reference is appropriate pursuant to § 157(d). That section provides:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C.A. § 157(d) (West 1993).

As the wording of the statute indicates, § 157(d) provides for both permissive and mandatory withdrawal of a case or proceeding referred to the bankruptcy court. With regard to permissive withdrawal, the court "may" withdraw the reference if "cause" exists. *Id.* In contrast, the court must withdraw the reference in instances where the "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* Defendant argues withdrawal is appropriate in this case under both the permissive and mandatory withdrawal provisions of § 157(d).

■ Defendant first contends permissive withdrawal is appropriate because it is entitled to a jury trial under the Seventh Amendment to the United States Constitution (the "Seventh Amendment"). The Trustee opposes withdrawal, arguing that Defendant is not entitled to a jury trial under the Seventh Amendment and, even if so entitled, Defendant lost that right by asserting a claim against the estate in the form of its unreasonableness "defense."

■ Because the bankruptcy court does not have authority to conduct a jury trial, *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 392 (10th Cir. 1990), "cause" to withdraw the reference automatically exists in cases where the party seeking withdrawal is entitled to a jury trial under the Seventh Amendment. Whether a party is entitled to a jury trial under the Seventh Amendment is decided under the analysis provided in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In *Granfinanciera*, the trustee for debtor Chase & Sanborn Corporation filed a fraudulent conveyance action against petitioners Granfinanciera, S.A., and Medex, Ltda., in the United States District Court for the District of Florida. *Id.* at 36, 109 S.Ct. at 2787. The district court referred the proceedings to the bankruptcy court. *Id.* at 36–37, 109 S.Ct. at 2787–2788. The bankruptcy court denied the petitioners' demand for a jury trial, and the petitioners appealed. *Id.* at 37, 109 S.Ct. at 2787. The district court and the United States Court of Appeals for the Eleventh Circuit affirmed, and the United States Supreme Court granted certiorari. *Id.*

In analyzing the petitioners' claimed seventh amendment right to a jury trial, the *Granfinanciera* Court developed a three-part analysis. First, a court analyzing a demand for a jury trial under the Seventh Amendment must " 'compare the statutory cause of action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.' " *Id.* at 42, 109 S.Ct. at 2790 (quoting *Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted)). Second, such a court must " 'examine the remedy sought and determine whether it is legal or equitable in nature.' " *Id.* (quoting *Tull*, 481 U.S. at 417–18, 107 S.Ct. at 1835). The second part of this analysis is more important than the first. *Id.* (citing *Tull*, 481 U.S.

---

**3.** Defendant also filed a Motion for Determination by the bankruptcy court whether the adversary proceeding constituted a "core proceeding" pursuant to 29 U.S.C. § 157(b) and Local Rule 406. This court is not required to await the bankruptcy court's determination prior to deciding the merits of the instant motion. *Styler v. Jean Bob (In re Concept Clubs, Inc.)*, 154 B.R. 581, 585 (D.Utah 1993).

at 421, 107 S.Ct. at 1837). Finding that a fraudulent conveyance action is analogous to a cause of action that would have been brought in a court of law in 18th-century England, and that the nature of the relief sought was primarily legal in nature, the *Granfinanciera* Court found that the petitioners were entitled to a jury trial, "[u]nless Congress may [withdraw] and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries...." *Id.* 492 U.S. at 49, 109 S.Ct. at 2794.

■ The Court then proceeded to the third part of the analysis, which embodies an exception to the Seventh Amendment. Under this part, the court must "decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder." *Id.* The Supreme Court explained that its Article–III precedent had established the proposition that Congress properly may assign the adjudication of novel causes of action involving "public rights" to non Article–III tribunals with which a jury trial would be incompatible. *Id.* at 51, 109 S.Ct. at 2795 (citing *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 455, 97 S.Ct. 1261, 1269, 51 L.Ed.2d 464 (1977)). Extending that proposition, the Court opined that in such a case, "the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Id.* 492 U.S. at 53–54, 109 S.Ct. at 2796. Therefore, where the cause of action asserted involves public rights, the Seventh Amendment does not require a jury trial.

The *Granfinanciera* Court defined public rights as either statutory causes of action that inhere in, or lie against the federal government in its sovereign capacity, *see id.* at 53, 109 S.Ct. at 2796, or seemingly private rights created by Congress that are " 'so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.' " *Id.* at 54, 109 S.Ct. at 2797 (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 593–94, 105 S.Ct. 3325, 3339–40, 87 L.Ed.2d 409 (1985)). In the bankruptcy context, the Court identified the "restructuring of debtor-creditor relations" as a possible public right.[4] *Id.* 492 U.S. at 56, 109 S.Ct. at 2797. Specifically, the Court pointed to "creditors hierarchically ordered claims to a pro rata share of the bankruptcy res."[5] *Id.*

The Court found support for the proposition that the claims allowance process may be a public right in its prior decision in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), in which the Court held that a party who filed a claim against the bankruptcy estate had no seventh amendment right to a jury trial on an avoidable preference counterclaim asserted by trustee. *Granfinanciera,* 492 U.S. at 57, 109 S.Ct. at 2798. *See Katchen,* 382 U.S. at 339–40, 86 S.Ct. at 478. The *Granfinanciera* Court explained that its holding in *Katchen* "turned ... on the bankruptcy court's having 'actual or constructive possession' of the bankruptcy estate ... and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate." *Id.* (quoting *Katchen,* 382 U.S. at 327, 86 S.Ct. at 471). Elaborating, the *Granfinanciera* Court noted that *Katchen* distinguished situations where the

---

4. The Court equivocated on this point in a footnote, stating:
 "We do not suggest that the restructuring of debtor-creditor relations is in fact a public right. This thesis has met with substantial criticism, ... and we need not and do not defend it here. Our point is even if one accepts this thesis, the Seventh Amendment entitles petitioners to a jury trial."
 *Id.* 492 U.S. at 56 n. 11, 109 S.Ct. at 2798 n. 11.

5. The Court contrasted the "restructuring of debtor-creditor relations," which " 'may well be

a public right,' " *id.* at 56, 109 S.Ct. at 2797 (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) (plurality opinion), with fraudulent conveyance actions, which "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* 492 U.S. at 56, 109 S.Ct. at 2798.

party demanding a jury trial had not filed a claim against the estate: " '[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 [1932], when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity.' " *Id.* (quoting *Katchen*, 382 U.S. at 336, 86 S.Ct. at 476).[6]

However, because the petitioners in *Granfinanciera* had made no claim against the bankruptcy estate, the Court did not render a holding on this point. *Id.* 492 U.S. at 58, 64, 109 S.Ct. at 2798, 2802. Therefore, the trustee's fraudulent conveyance action did not arise " 'as part of the process of allowance and disallowance of claims,' " nor was it "integral to the restructuring of debtor-creditor relations." *Id.* at 58, 109 S.Ct. at 2799. Thus, the Court determined that the public rights exception to the Seventh Amendment did not apply, and the petitioners were entitled to a jury trial. *Id.*

Although the *Granfinanciera* Court equivocated on the question whether the restructuring of debtor-creditor relations

**6.** In a footnote, the *Granfinanciera* court further explained its rationale in *Katchen*:

> In *Katchen*, . . . we adopted a rationale articulated in *Alexander v. Hillman*, 296 U.S. 222, 241–242 [56 S.Ct. 204, 210–211, 80 L.Ed. 192] (1935) (citations omitted):
>
>> By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance. . . .
>>
>> . . . . .
>>
>> Respondents' contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated. In behalf of creditors and stockholders, the receivers reasonably may insist that, before taking aught, respondents may by the receivership court be required to make restitution. That requirement is in harmony with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief.

*Id.* 492 U.S. at 59 n. 14, 109 S.Ct. 2799 n. 14 (quoting *Katchen*, 382 U.S. at 335, 86 S.Ct. at 476). Therefore, the Court noted: "As *Katchen*

is a public right, *see supra* note 4, it apparently affirmed this proposition in *Langenkamp v. Culp*, 498 U.S. 42, 44–45, 111 S.Ct. 330, 331–332, 112 L.Ed.2d 343 (1990) (per curiam).[7] Drawing on its discussion of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), in *Granfinanciera*, the *Langenkamp* Court implicitly recognized the restructuring of the debtor-creditor relationship through the claims allowance process as a public right. The Court stated:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14 [109 S.Ct. at 2799–2800, and n. 14] (citing *Katchen, supra*, [382 U.S.] at 336 [86 S.Ct. at 476] ). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. *Granfinanciera, supra*, [492 U.S.] at 57–58

makes clear, . . . by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate." *Id.*

**7.** The public rights doctrine was not mentioned in *Langenkamp*. Instead, *Langenkamp* relied on that part of *Granfinanciera* that attempted to reconcile *Granfinanciera*'s public rights pronouncement with *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and other cases that were decided on the basis of the bankruptcy court's possession of the bankruptcy res. *Langenkamp*, 498 U.S. at 44–45, 111 S.Ct. at 331–332. *Langenkamp* thus could be read as either extending the public rights doctrine to situations where the bankruptcy court is involved in the process of restructuring debtor-creditor relations or simply reaffirming *Katchen v. Landy* and other cases decided prior to the Bankruptcy Reform Act. *See Allied Cos. v. Holly Farms Foods, Inc. (In re Allied Cos.)*, 137 B.R. 919, 924 (S.D.Ind.1991). This court believes the former interpretation to be the more defensible.

[109 S.Ct. at 2798–2799]. As such, there is no Seventh Amendment right to a jury trial. . . .

Accordingly, "a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends on whether the creditor has submitted a claim against the estate. . . ."

*Id.* 498 U.S. at 44–45, 111 S.Ct. at 331 (emphasis in original) (quoting *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. at 2799). Together, therefore, *Granfinanciera* and *Langenkamp* make clear that a creditor who files a claim against the estate submits itself to the equity jurisdiction of the bankruptcy court, both on the merits of the creditor's claim and also on any contrary assertions of right by the trustee or debtor.[8]

In the present case, the court need not determine whether the first two prongs of the *Granfinanciera* test are satisfied because it finds the third prong, the public rights exception, applies. At least in the case at hand, there appears to be no reason to distinguish between Defendant's assertion of its unreasonableness "defense" in its Answer and a formal proof of claim for the purpose of determining Defendant's entitlement to a jury trial under the rationale of *Granfinanciera* and *Langenkamp.*[9]

Though denominated a "defense," the unreasonableness claim is in reality a counter-

**8.** It is arguable that *Granfinanciera* stands for the limited proposition that, by presenting a claim against the estate, the creditor loses its right to a jury trial in an action brought by the trustee or debtor only where the trustee or debtor's action is asserted procedurally as an objection to the creditor's claim. *Granfinanciera* speaks in terms of whether the trustee or debtor's action arises "as part of the process of allowance and disallowance of claims." *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. at 2799. It is only when a preference or fraudulent conveyance action, or in the case at hand, a turnover action, is raised as an *objection* to a proof of claim that the bankruptcy court's power to disallow that claim under § 502(d) of the United States Bankruptcy Code is invoked. *See* 11 U.S.C.A. § 502(d) (West 1993).

*Langenkamp,* however, rejected such a narrow reading of *Granfinanciera.* In *Langenkamp,* the debtors were uninsured, nonbank financial institutions doing business in Oklahoma. *Langenkamp,* 498 U.S. at 43, 111 S.Ct. at 330. The respondent creditors held thrift and passbook savings certificates issued by the debtors. *Id.* The debtors filed a chapter 11 petition on September 24, 1984. Within the 90–day period immediately preceding the chapter 11 filing, the respondents redeemed some, but not all, of the debtors' certificates that they held. *Id.* Subsequent to the petition date, some of the respondents that continued to have money invested in the debtors at the time of bankruptcy filed proofs of claim for those monies. *Langenkamp v. Hackler (In re Republic Trust & Savs. Co.),* 897 F.2d 1041, 1042, 1046 (10th Cir.), *rev'd sub nom. Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). The trustee for the debtors instituted adversary proceedings against the respondents, seeking to recover the payments as avoidable preferences. *Id.* at 1043.

Following the narrow reading of *Granfinanciera,* the United States Court of Appeals for the Tenth Circuit held that the respondents who had filed claims against the estate were entitled to a jury trial on the trustee's preference actions because the trustee's actions "were plenary rather than as part of the bankruptcy court's summary proceedings involving the 'process of allowance and disallowance of claims.'" *Id.* at 1046–47. The Supreme Court promptly reversed. *Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331.

The Supreme Court held that by submitting a claim against the estate, the creditors in that case submitted to the bankruptcy court's equity jurisdiction with regard to the trustee's preference action, despite the fact that the preference action was not asserted as an objection to a proof of claim, but rather as an independent adversary proceeding. *Id.* at 44–45, 111 S.Ct. at 331–332. In so holding, the Supreme Court focused less on the claims-allowance process and more on the "restructuring of the debtor-creditor relationship." *Id.* at 44, 111 S.Ct. at 331. Therefore, in the case at hand, the fact that the Trustee brought its action in an adversary proceeding rather than asserting it as an objection to a proof of claim does not change the applicable analysis.

**9.** Although *Granfinanciera* involved a fraudulent conveyance action and *Langenkamp* involved a preference action, the reasoning underlying those decisions also applies to the Trustee's turnover action in the case at hand. Each of these actions may be asserted as an objection to a claim presented by a creditor, thus becoming a part of the claims allowance process. *See* 11 U.S.C.A. § 502(d) (West 1993). However, even when not raised procedurally as an objection to a creditor's claim, resolution of a turnover action is just as integral to the restructuring of the debtor-creditor relationship as is resolution of a fraudulent conveyance or preference action. Moreover, as explained *supra* note 8, the Supreme Court's focus in *Langenkamp* was not on the procedural posture in which the trustee's action was asserted, but on the creditor's submission to the bankruptcy court's equity jurisdiction. In that regard, it is the fact of the creditor's claim against the estate that is important, not the procedural posture of the trustee's action or the timing of the creditor's claim.

claim. *Reiter v. Cooper,* —— U.S. ——, ——–——, 113 S.Ct. 1213, 1217–18, 122 L.Ed.2d 604 (1993). The unreasonableness claim is based on § 11705(b)(3) of the Interstate Commerce Act, which gives shippers an express cause of action for damages in the amount of the difference between the tariff rate and the rate determined to be reasonable by the Interstate Commerce Commission (the "ICC"). 49 U.S.C.A. § 11705(b)(3) (West Partial Revision Pamphlet 1993); *Reiter,* —— U.S. at ——, 113 S.Ct. at 1217. Because the rate ultimately determined by the ICC to be reasonable may be less than the amount paid to the carrier, the shipper may be entitled to affirmative relief against the carrier. In the case at hand, Defendant's Answer does not limit the relief it seeks merely to an offset of any liability it may have as a result of a failure to pay the Debtor the filed rate, but also seeks "such other and further relief as the court deems just."[10] Answer at 5.

▄▄▄ Therefore, Defendant's "defense" in reality presents a claim against the estate, and, under the reasoning of *Granfinanciera* and *Langenkamp,* that claim and the Trustee's turnover action become "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction.*"[11] *Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331 (citing *Granfinanciera,* 492 U.S. at 57–58, 109 S.Ct. at 2798–2799) (emphasis in original). The majority of other courts that have considered whether a counterclaim constitutes a "claim" under *Granfinanciera* and *Langenkamp* have reached the same conclusion.[12] *See, e.g., Allied Cos. v.*

**10.** In this regard, the court also notes that Defendant asserts as a *separate* defense that it is entitled to an offset for any amounts found owing by the Debtor or its estate to Defendant. Answer at 4 (sixteenth defense).

**11.** Indeed, Defendant's unreasonableness counterclaim qualifies as an informal proof of claim. Bankruptcy Rule 3001(a) defines proof of claim as "a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Bankr.R. 3001(a). Perhaps picking up on the word "substantially," bankruptcy courts over the years have developed an informal proof of claim "doctrine," largely to ameliorate the perceived harsh result of strict enforcement of the claims bar date. 8 Collier on Bankruptcy ¶ 3001.03 (Lawrence P. King ed. 1993). The doctrine permits a court to treat something other than a proof of claim as an "informal" proof of claim that is timely filed and thereafter file a "formal" proof of claim that relates back to the date of the original filing. *Id.* at 3001–13.

The United States Court of Appeals for the Tenth Circuit has utilized the following five-prong test with respect to informal proofs of claim:
 1. the proof of claim must be in writing;
 2. the writing must contain a demand by the creditor on the debtor's estate;
 3. the writing must express an intent to hold the debtor liable for the debt;
 4. the proof of claim must be filed with the Bankruptcy Court; and
 5. based on the facts of the case, it would be equitable to allow the amendment.
*Clark v. Valley Fed. Savs. & Loan Ass'n (In re Reliance Equities, Inc.),* 966 F.2d 1338, 1344 (10th Cir.1992). The fifth prong obviously deals with the question of whether an amendment should be allowed once the informal proof of claim is determined to be valid, and thus has no applicability here. *In re Vaughn Chevrolet, Inc.,* 160 B.R. 316, 319 n. 2 (Bankr.E.D.Tenn.1993). Therefore, the validity of the informal proof of claim is determined under the first four factors. *Id.* A counterclaim has been held to constitute an informal proof of claim under these four factors. *Cf. Hatzel & Buehler, Inc. v. Station Plaza Assocs.,* 150 B.R. 560, 561 (Bankr.D.Del. 1993) (counterclaim satisfies informal proof of claim requirements that such claim " 'must be in the form of a pleading filed in the bankruptcy court which shows "that a demand is made against the estate" and "the creditor's intention to hold the estate liable." ' ") (quoting *In re Wilbert Winks Farm, Inc.,* 114 B.R. 95, 97 (Bankr. E.D.Pa.1990)).

Similarly, Defendant's counterclaim in the case at hand satisfies the test for an informal proof of claim. It is in writing, contains a demand by the creditor against the debtor's estate, expresses an intent to hold the debtor liable for the debt, and was filed with the bankruptcy court.

**12.** Courts addressing the issue are divided on the question whether the filing of a compulsory counterclaim is sufficient to constitute "consent" to the bankruptcy court's equity jurisdiction. *Compare Beard v. Braunstein,* 914 F.2d 434, 441–42 (3rd Cir.1990) ("We agree that the 'better rule . . . is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim.' ") (quoting 6 Charles A. Wright, et al., Federal Practice and Procedure Civil 2d § 1416, at 125 (1990) *with In re Allied Cos.,* 137 B.R. at 924–25. In this regard, the *In re Allied Cos.* court appears to have the better of the argument. The Supreme Court in *Granfinanciera* specifically disclaimed the idea that a waiver rationale explained why those who filed claims lost any entitlement to a jury trial. *Granfinanci-*

*Holly Farms Foods, Inc. (In re Allied Cos.),* 137 B.R. 919, 922–25 (S.D.Ind.1991) (compulsory counterclaim that sought reclamation of certain goods or requested priority claim or lien is within type of claims that eliminates necessity for jury trial under *Granfinanciera* and *Langenkamp* ); *Bayless v. Crabtree,* 108 B.R. 299, 304–05 (W.D.Okla.1990) (counterclaim was type of claim contemplated in *Granfinanciera* that results in loss of entitlement to jury trial), *aff'd* 930 F.2d 32 (10th Cir.1991); *Shields v. Ciccone (In re Lloyd Securities, Inc.),* 156 B.R. 750, 754 (Bankr. E.D.Pa.1993) (filing of permissive counterclaim seeking affirmative relief against debtor/trustee was sufficient invocation of bankruptcy court's equitable "claims resolution" process to eliminate defendant's right to jury trial); *cf. Styler v. Jean Bob, Inc. (In re Concept Clubs, Inc.),* 154 B.R. 581, 589 (D.Utah 1993) (action for setoff raised only as affirmative defense seeking to reduce or extinguish trustee's claim, rather than as counterclaim seeking affirmative relief, does not invoke bankruptcy court's equity jurisdiction). By presenting a claim against the estate, Defendant has submitted to the bankruptcy court's equity jurisdiction and is not entitled to a jury trial.

■ Defendant next argues mandatory withdrawal is appropriate under § 157(d).

The mandatory withdrawal portion of that section provides that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C.A. § 157(d) (West 1993). Defendant argues that the Trustee's action requires consideration of the Interstate Commerce Act, 49 U.S.C.A. §§ 10101–11907 (West Partial Revision Pamphlet 1993), and, therefore, the court is required by § 157(d) to withdraw the reference.

This court disagrees. Although the language of this provision is broad, the legislative history indicates that it is to be construed narrowly to avoid it becoming " 'an escape hatch through which most bankruptcy matters will be moved to a district court.' " 1 Collier on Bankruptcy ¶ 3.01, at 3–66 to 3–70 (Lawrence P. King, ed. 1993) (quoting 130 Cong.Rec. H1850 (daily ed. March 21, 1984) (statement of Representative Kastenmeier)). In light of this legislative history, courts have read "consideration" to mean "something more than the mere process of examining, thinking about, or taking into account." *American Freight Sys., Inc. v. I.C.C. (In re American Freight Sys., Inc.),* 150 B.R. 790,

---

*era,* 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14. The Court explained that while such a rationale makes sense in the situation where a party has the choice of an Article III court or an administrative forum to resolve disputes, and the party chooses the speedier administrative forum, such a rationale is inappropriate in the bankruptcy context where "creditors lack an alternative forum to the bankruptcy court in which to pursue their claims." *Id.* (distinguishing *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). Instead, the Court made clear that *Granfinanciera* was based on the bankruptcy court's possession of a disputed res to which the creditor laid claim. Thus, the key to the loss of a jury trial lies not in some choice purportedly made by the claimant, but on the bankruptcy court's possession of the estate and its equitable power to allow or disallow claims made against the estate. *In re Allied Cos.,* 137 B.R. at 925.

The result in this case remains the same, however, even under the rationale of those cases holding that the assertion of a compulsory counterclaim does not subject the counterclaimant to

the equity jurisdiction of the bankruptcy court because, in the case at hand, Defendant's unreasonable rate counterclaim is permissive. Although Defendant's counterclaim arguably arises out of the same transaction or occurrence as the Trustee's claim, *see* Fed.R.Civ.P. 13(a), Bankruptcy Rule 7013 provides:

> Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose *after* the entry of an order for relief. . . .

Bankr.Rule 7013. Defendant's counterclaim arose prepetition. Under Bankruptcy Rule 7013, therefore, Defendant's counterclaim is permissive.

In addition, some courts limit the applicability of *Granfinanciera* and *Langenkamp* to situations where the counterclaimant seeks affirmative relief. *See, e.g., Styler v. Jean Bob (In re Concept Clubs, Inc.),* 154 B.R. 581, 589 (D. Utah 1993). Such a limitation poses no difficulty in the case at hand, however, because, as explained above, Defendant's counterclaim seeks affirmative relief.

792 (D.Kan.1993) (citing *In re White Motor Corp.*, 42 B.R. 693, 700, 704 (N.D.Ohio 1984)). Under such a reading, withdrawal is mandatory " 'only if [the] court can make an affirmative determination that resolution of the claims will require substantial and material consideration of ... non-Code statutes.' " [13] *Id.* at 792–93 (quoting *In re White Motor Corp.*, 42 B.R. at 705). "The consideration of the non-Code law must entail more than its routine application to the facts. *Id.* (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied sub nom. Air Line Pilots Ass'n, Int'l v. Shugrue,* ——— U.S. ———, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991)).

 The movant bears the burden of making a timely motion demonstrating that the proceeding qualifies for mandatory withdrawal. *In re Continental Airlines*, 138 B.R. 442, 444–45 (D.Del.1992). It is not enough simply to speculate about which issues could arise and whether they will be significant in resolving the proceeding. *Sibarium v. NCNB Texas Nat'l Bank*, 107 B.R. 108, 111 (N.D.Tex.1989).

In the present case, Defendant has made no showing that the Trustee's adversary proceeding will involve anything more than the routine application of the Interstate Commerce Act to the facts. Therefore, Defendant's motion to withdraw the reference from the bankruptcy court is denied.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Withdraw the Reference of Adversary Proceeding 93PC 2327 is denied.

---

**13.** A minority of courts, noting that the mandatory withdrawal language of § 157(d) is in the conjunctive, have applied the "substantial and material" limitation to title 11 issues also. *See, e.g., Brizendine v. Montgomery Ward & Co.*, 143 B.R. 877, 878–79 (N.D.Ill.1992); *System Freight, Inc. v. Midas Int'l Corp. (In re System Freight, Inc.)*, 1991 W.L. 33150, at * 2 (D.N.J.1991). Under the reasoning of these cases, withdrawal is not mandated unless resolution of the proceeding requires substantial and material consideration of title 11 as well as "other laws of the United States regulating organizations or activities affecting interstate commerce." *See, e.g., Brizendine*, 143 B.R. at 878–79 (withdrawal not mandated because "[t]itle 11 does not need to be considered in this action; it merely provides the authority under which plaintiff has become successor of the bankrupt corporations"); *In re System Freight*, 1991 W.L. 33150 at * 2 (withdrawal not mandated because debtor's undercharge action did not require consideration of "substan-

tial" and "material" issues of bankruptcy law). Under such reasoning, withdrawal of the reference in the case at hand is not mandated because resolution of the proceeding does not require substantial and material consideration of title 11.

The majority of courts reject such application of the "substantial and material" limitation to title 11 issues, holding that it is enough for mandatory withdrawal if the resolution of the proceeding requires "consideration of bankruptcy law and the substantial and material consideration of non-bankruptcy federal statutes regulating activities affecting interstate commerce." *In re American Freight Sys., Inc.*, 150 B.R. at 794. The court need not decide between the competing positions, however, because even under the majority position, withdrawal of the reference is not mandated. As explained below, resolution of the Trustee's undercharge action does not require substantial and material consideration of the Interstate Commerce Act.