## In re LARRY'S APARTMENT, L.L.C., Debtor.

**Michael W. CARMEL, Chapter 11 Trustee for the Bankruptcy Estate of Larry's Apartment, L.L.C; and N.D. Duco Corporation, a Nevada, Larry and Linda Jarnagin, husband and wife, Plaintiffs,**

v.

**Michael GALAM, Defendant.**

**No. Civ. 96–1826 PHX EHC.**
**Bankruptcy–95–01175 PHX RGM.**
**Adv. No. 96–00468.**

United States District Court,
D. Arizona.

March 17, 1997.

---

Michael W. Carmel, Phoenix, AZ, pro se.

David A. Weatherwax, Fennemore Craig, Phoenix, AZ, for ND Duco Corp., Larry Jarnagin, Linda Jarnagin.

Craig J. Bolton, O'Connor Cavanagh Anderson Westover Killingworth & Beshears, Phoenix, AZ, for Michael Galam.

CARROLL, District Judge.

Debtor Larry's Apartment, L.L.C., an Arizona limited liability company, ("Debtor") filed for protection under Chapter 11 of the Bankruptcy Code. The Chapter 11 Trustee, Michael Carmel, and N.D.Duco Corporation and Larry and Linda Jarnagin ("Plaintiffs") thereafter initiated an adversary proceeding against Michael Galam ("Galam" or "Defendant"). Defendant has filed a "Motion to Withdraw the Reference" of the Adversary Proceeding from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a). (Dkt.1). Plaintiffs oppose the motion.

## I. Background

The Debtor was formed in January 1993. It operated the Jungle Cabaret ("Cabaret") in a building ("the Building") leased from N.D. Duco Corporation ("NDDC").[1] The Jarnagins loaned $1.2 million to the Debtor for construction and development of the Cabaret.[2] The loan was secured by all of the Cabaret's assets, including the Building, business, and the liquor license.

The parking lot ("Parking Lot") next to the Building was owned by the Abner E. England Trust. Access to the Parking Lot was essential for the Cabaret to succeed. On September 23, 1993, the Trust, Debtor, and Debtor's managing "member" Michael Taraska ("Taraska") executed a Lease Agreement ("Lease") of the Parking Lot for a five year term. On December 10, 1993, Debtor filed a Chapter 11 petition.

On June 15, 1994, the Trust, Debtor, and Taraska executed an Amended Lease, reducing the rent and the lease term from five years to one year, unbeknownst to the Jarnagins or NDDC, because Debtor was in arrears under the Lease. In the Amended Lease, the parties acknowledged that Debtor was in default on the Lease. None of the parties sought Bankruptcy Court approval of the Amended Lease. On July 20, 1994, Debtor voluntarily dismissed his bankruptcy petition.

On July 26, 1994, Galam and Taraska entered into an "Amended and Restated Operating Agreement" for the Debtor. Pursuant to this Agreement, Taraska retained management responsibilities and a 91% interest in the Debtor and Galam obtained the remaining 9% interest in exchange for a $45,000 capital contribution.

On October 7, 1994, Galam and Taraska offered to purchase the Parking Lot from the Trust for $90,000, unbeknownst to the Jarnagins and NDDC. Plaintiffs contend that Taraska and Galam wanted to purchase the Lot to use it as leverage in connection with litigation Taraska and Galam intended to file against NDDC and the Jarnagins. The Trust accepted the offer on October 21, 1994.

On October 27, 1994, Galam and the Trust opened an escrow account for purchase of the Parking Lot. Escrow closed on November 9, 1994 after Galam delivered $90,000 to the escrow agent. Pursuant to the sale, the Trust assigned it's interest in the Amended Lease to Galam.

Plaintiffs contend that sometime between October 21 and November 22, 1994, the purchase agreement for the Lot was altered so that Galam would be the sole owner of the Lot.[3] Plaintiffs also contend that Galam and Taraska caused the Lot to be put in Galam's name because they were concerned about counterclaims NDDC and the Jarnagins would bring in two lawsuits filed by Taraska on October 5 and November 7, 1994 in state court.[4]

Galam contends that Taraska, as the managing member of Debtor, approved his purchase of the Parking Lot. Galam also contends that Debtor was not in bankruptcy at the time that he entered into negotiations with the Trust to purchase the Lot or at the time that the Lot was actually purchased.

Following his purchase of the Lot, Galam allegedly terminated the Amended Lease. Plaintiffs contend that Galam and Taraska have taken the position that the Debtor's interest in the Parking Lot is terminated, but have failed to produce any documentation to that effect. Plaintiffs further contend that despite the alleged termination, Galam gave the Debtor the unfettered right to use the Lot for it's business until June 1996, *i.e.* for approximately twenty months, until the Trustee was appointed.

---

1. NDDC was formed by the Jarnagins to purchase the Building. Larry Jarnagin owns most or all of the stock in NDDC.

2. Plaintiffs contend that the Jarnagins did not know that the Cabaret was to be a topless bar when they made the loan.

3. On October 20, 1994, Load Lock–n–Roll, a company controlled and/or owned by Galam, obtained a 26% interest in Debtor from Taraska in exchange for a $186,250 capital contribution, reducing Taraska's interest in Debtor to 65%.

4. Plaintiffs allege that summary judgment was entered by the state court on all issues against Taraska and the Debtor.

Galam alleges that he has paid property taxes and insurance on the Lot from funds in his personal checking account. Galam concedes that Debtor has never paid rent to him for use of the Lot.

On February 13, 1995, the Debtor filed a second Chapter 11 petition. The Debtor did not list the Lot as an asset on it's Schedule of Assets and Liabilities. Furthermore, neither the Lease or the Amended Lease were listed in Debtor's Schedules of Executory Contracts. Debtor did not move the Bankruptcy Court to assume the Lease or the Amended Lease within sixty days after filing the second Chapter 11 petition.

In June 1996, Plaintiffs filed a motion for appointment of a trustee over Debtor. Michael Carmel was appointed trustee (hereafter "Trustee") by the Bankruptcy Court. Plaintiffs contend that during the six day "trial" resulting in the appointment of the Trustee, Taraska advised the Bankruptcy Court that if a Trustee was appointed, Taraska or Galam would prevent the Debtor from using the Lot and thus force the Cabaret to close. Plaintiffs further contend that after the Trustee's appointment, Galam assured the Trustee that he did not intend to disrupt the Debtor's business and would not attempt to take control of the Lot without the Bankruptcy Court's permission. Plaintiffs contend that Galam nevertheless subsequently caused the Lot to be posted as a no parking zone; had cars of Debtor's customers and employees towed on at least two occasions; erected a screened fence around the Lot preventing Debtor and it's customers from using the Lot and obscuring the Debtor's signs, making the business appear to be closed; caused a "scene" at the Cabaret requiring police intervention; and refused to turn over Debtor records and other assets of the business.

Plaintiffs filed this adversary proceeding allegedly in response to the actions of Galam. Plaintiffs allege breach of fiduciary duties to the Debtor; breach of an oral contract between Galam and the Trustee; breach of the implied covenant of good faith and fair dealing in connection with the Lease and Amended Lease; conversion; fraudulent conveyance; and fraudulent transfer in violation of 11 U.S.C. § 548. Plaintiffs also allege that Defendant received an avoidable preferential transfer pursuant to 11 U.S.C. § 547. Plaintiffs also seek an accounting to the Trustee and return of certain Debtor's books and records pursuant to 11 U.S.C. §§ 521 and 542.

Following a hearing and purportedly without notice to Galam, the Bankruptcy Court entered a temporary restraining order prohibiting Galam from selling the Lot, blocking access to the Lot, or interfering with the Debtor's business. The parties subsequently stipulated to entry of a preliminary injunction. Galam now seeks withdrawal of the reference from the Bankruptcy Court.

## II. Discussion

Under the Bankruptcy Amendments and Judgeship Act, the district courts have original and exclusive jurisdiction of all cases arising under Title 11. 28 U.S.C. § 1334(a). The district courts are expressly authorized by 28 U.S.C. § 157 to refer all such cases to the Bankruptcy Court. Section 157 also provides for withdrawal of the reference as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on it's own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Section 157(d) provides for discretionary withdrawal for "cause shown" and mandatory withdrawal if the proceeding requires consideration of both the Bankruptcy Code and other federal statutes. Furthermore, because bankruptcy courts cannot conduct jury trials on non-core matters, withdrawal is mandated if a litigant is entitled to jury trial on such matters. *In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir. 1990). The movant bears the burden of proof on a motion to withdraw the reference.

*Damir v. Bank of America, NT & SA*, 1994 WL 544474, *1 (N.D.Cal.*); In re Ponce Marine Farm, Inc.*, 172 B.R. 722, 724 (D.P.R. 1994); *Americana Expressways, Inc.*, 161 B.R. 707, 714 (D.C.Utah 1993); *In re Concept Clubs*, 154 B.R. 581, 583 (D.Utah 1993).

Defendant contends that the adversary proceeding must be withdrawn because he timely requested a jury trial to which he is entitled and the adversary proceeding involves non-core matters.[5] Plaintiffs contend that by filing counterclaims in the adversary proceeding, Galam submitted to the jurisdiction of the Bankruptcy Court. Plaintiffs contend that the factors to be considered with respect to discretionary withdrawal favor non-withdrawal.

### A. Jury Trial

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 35–37, 109 S.Ct. 2782, 2787, 106 L.Ed.2d 26 (1989), the United States Supreme Court addressed the Seventh Amendment right to jury trial in the bankruptcy context. As an initial matter, the Court discussed the historic construction of the Seventh Amendment's provision that "suits at common law" involve claims of a legal, rather than an equitable nature, and was entitled to jury trial. *Id.* at 40–42, 109 S.Ct. at 2790. The Court then analyzed whether a claim for fraudulent conveyance or transfers were more analogous to claims brought in courts of equity or law in Eighteenth Century England. *Id.* Next, the Court determined whether the remedy sought was legal or equitable. *Id.* The Court concluded that such claims were more legal than equitable in character. *Id.*

Without deciding whether a bankruptcy court could conduct a jury trial in a fraudulent conveyance action brought by the trustee against a person who had not submitted a claim against the bankruptcy estate or whether Congress could lawfully authorize bankruptcy courts to hold jury trials in such actions or whether such trials would satisfy the Seventh Amendment, the Court next addressed whether the Seventh Amendment

conferred a right to jury trial on a defendant in the face of Congress' decision to allow a non-Article III tribunal to adjudicate such claims against it. *Id.* at 54–56, 109 S.Ct. at 2797. The Court held that in certain situations Congress could; if a statutory right not closely intertwined with a federal regulatory program and which neither belonged to or was asserted against the federal government and the right was legal in nature, then the defendant was entitled to a jury trial. *Id.* at 57–59, 109 S.Ct. at 2799. The Court found a trustee's action to recover a fraudulent conveyance or transfer constituted a private right entitling the defendant to jury trial, *if* the defendant had not submitted a claim to the bankruptcy estate. *Id.* Where a defendant has made a claim on the estate, the defendant has submitted to the process of allowance and disallowance of claims adjudicable by the bankruptcy court. *Id. See, Langenkamp v. Culp*, 498 U.S. 42, 43–45, 111 S.Ct. 330, 331–32, 112 L.Ed.2d 343 (1990) (where the bankruptcy trustee seeks to recover an allegedly fraudulent transfer in an adversary proceeding from a defendant who has not filed a claim against the estate, the defendant is entitled to a jury trial).

Since *Granfinanciera* and *Langenkamp* were decided, courts have construed counterclaims filed in an adversary proceeding as claims against the bankruptcy estate which divest a defendant in an adversary proceeding of the right to a jury trial. *See, Peachtree Lane Assoc., Ltd. v. Granader*, 175 B.R. 232, 236 (N.D.Ill.1994) (defendants in an adversary action waived their right to a jury trial by filing counterclaims and successfully seeking an extension of the bar date so that their counterclaims could be treated as proofs of claim against the estate); *In re Hudson*, 170 B.R. 868, 874 (E.D.N.C.1994) ("convincing authority has held that a counterclaim does qualify as a 'claim' for purposes of the ... *Granfinanciera* and *Langenkamp* private rights jury trial analysis ... the defendant's filing of a counterclaim caused the defendant to lose it's Seventh Amendment right to jury trial"); *In re Lang*, 166 B.R.

---

**5.** Galam contends that any ruling by the Bankruptcy Court would be advisory and would require *de novo* review by a district court. Galam further contends that the Bankruptcy Court's inexperience with jury trials would hamper it in conducting a jury trial.

964, 966 (D.Utah 1994); *Americana Express-ways, Inc.*, 161 B.R. at 714 ("[b]y presenting a [defense which, in reality, presents a counterclaim against the estate], Defendant has submitted to the bankruptcy court's equity jurisdiction and is not entitled to a jury trial"). *See also, Billing v. Ravin Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250, 1253 (3rd Cir.) (debtors' legal malpractice claims against bankruptcy counsel filed as new action in district court fell within the process of allowance and disallowance of claims such that debtors not entitled to jury trial), *cert. denied,* 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994); *In re Lloyd Securities, Inc.*, 156 B.R. 750, 755 (Bankr.E.D.Pa.1993); *In re Allied Cos., Inc.*, 137 B.R. 919, 924 (S.D.Ind.1991) (compulsory nature of counterclaim not dispositive of issue); *Bayless v. Crabtree*, 108 B.R. 299 (W.D.Okla.1989), *aff'd* 930 F.2d 32 (10th Cir.1991); *In re Glen Eagle Square, Inc.*, 132 B.R. 106 (Bankr. E.D.Pa.1991). *But see, Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990) (declining to construe compulsory counterclaim as claim against the estate where the counterclaim was legal in nature and trustee's action was not a core proceeding).

■ Plaintiffs allege fraudulent conveyance and transfer claims, among others, against Defendant; such matters constitute core proceedings subject to Bankruptcy Court jurisdiction. Furthermore, Defendant concedes that he filed "compulsory counterclaims" in the adversary action. Although he describes his counterclaims as sounding in tort, and therefore legal, he has not submitted copies of his counterclaims (or any bankruptcy pleadings) in support of his motion or otherwise described his counterclaims.[6]

A district court may decline to withdraw the reference of an adversary proceeding based upon a movant's failure to attach relevant bankruptcy pleadings or otherwise provide information necessary to determine whether an adversary proceeding raised legal claims triable by a jury. *See, In re Beeline Engineering & Const., Inc.*, 154 B.R. 790, 791 (S.D.Fla.1993). The Court con-

cludes that Defendant has not established that he is entitled to jury trial in the adversary proceeding and declines to withdraw the reference on that basis.

*B. Discretionary Withdrawal*

Defendant also seeks withdrawal on discretionary grounds. Plaintiffs argue that the Court should deny the motion because (1) Defendant waived any right to jury trial by invoking the Bankruptcy Court's equity jurisdiction; and (2) no other basis exists for permissive withdrawal of the reference. Alternatively, Plaintiffs argue that the Court should deny, the motion as premature at least until the Bankruptcy Court has had an opportunity to rule on any dispositive motions.

■ Factors affecting a discretionary withdrawal pursuant to § 157(d) include: judicial economy; whether withdrawal would promote uniformity of bankruptcy administration; reduction of forum shopping and confusion; conservation of debtor and creditor resources; expedition of the bankruptcy process; and whether a jury trial has been requested. *See, e.g., Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985); *In re Houbigant, Inc.*, 185 B.R. 680, 685 (S.D.N.Y.1995); *In re Keene Corp.*, 182 B.R. 379, 383 (S.D.N.Y.1995); *Hatzel and Buehler, Inc. v. Central Hudson Gas & Electric Corp.*, 106 B.R. 367, 371 (D.Del.1989).

■ The Court concludes that these factors all favor adjudication by the Bankruptcy Court. The bankruptcy case has been pending since February 1995. The Bankruptcy Court is in the best position to expedite the bankruptcy process and withdrawal of the reference would· almost certainly result in considerable expenditure of debtor and creditor resources and increase delay. Defendant has presented no persuasive argument that withdrawal would promote administration of the bankruptcy or reduce forum shopping. The Court has already determined that Defendant is not entitled to a jury trial.

---

6. Galam contends that Plaintiffs have failed to allege specific factual allegations in their Complaint in support of their fraudulent convey-ance/transfer counts, but has not submitted the Complaint in support of their motion.

Furthermore, Defendant has not shown that he will suffer any measurable injury or prejudice if the case is not withdrawn at this time. As such, the Court finds that the Bankruptcy Court is better able to continue to preside over the pretrial matters. *See, Business Communications, Inc. v. Freeman,* 129 B.R. 165, 166 (N.D.Ill.1991). The Court will deny the motion to withdraw the reference.

Accordingly,

**IT IS ORDERED** denying the Motion to Withdraw the Reference in CIV 96–1826 (Dkt.# 1).